Filed 10/24/13  In re R.H. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re R.H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>R.H.,<br><br>        Defendant and Appellant. | A135875<br><br>(San Mateo County<br>Super. Ct. No. 77805)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING [No Change in Judgment]** |

THE COURT:

It is ordered that the opinion filed herein on September 25, 2013, be modified as follows:

1.   On page 2, the last sentence of the first full paragraph, delete the word 'Next" so the sentence reads:  "Luis was sitting on Carlos's green BMX bicycle."

2.  On page 3, delete the sixth and seventh sentences of the first full paragraph: "After the robbers started to leave, appellant returned and took Carlos's bicycle. He rode away on the bike, with U.K. running alongside."  Replace the deleted sentences with a single sentence stating, "After the robbers started to leave, one of them came back, grabbed Carlos's bicycle, then rode off on it as the other robber ran alongside."

1

3. On page 4, at the bottom of the first full paragraph, delete the sentence stating, "He indicated he was involved in gangs and that gang members had to follow orders," and insert the following sentence in its place, "He stated that in his prior involvement with gangs he'd been told to follow orders and not ask questions."

There is no change in the judgment.

The petition for rehearing is denied.

Dated: _____        _____

                                                           Dondero, Acting P.J.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re R.H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>R.H.,<br><br>        Defendant and Appellant. | A135875<br><br>(San Mateo County<br>Super. Ct. No. 77805) |

After a contested jurisdictional hearing, allegations of an amended petition alleging appellant committed two counts of robbery (Pen. Code, §§ 211, 212.5)[1] while armed with a firearm (§ 12022, subd. (a)(1)), and two counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(2)) were sustained. Special allegations pursuant to section 1192.7, subdivision (c)(23) (alleging that the offenses were serious felonies because appellant personally used a dangerous or deadly weapon)[2] were also sustained as to the two counts of assault with a deadly weapon. Appellant was continued as a ward of the court and probation was reinstated, on condition that the then 19 year old serve 830 days in county jail. On appeal, appellant contends that the admission of evidence of his

---

[1] All further statutory references are to the Penal Code.

[2] It is unclear why the allegation was alleged pursuant to section 1192.7, subdivision (c)(23), which references use of a deadly or dangerous weapon, rather than pursuant to section 1192.7, subdivision (c) (8) which references use of a firearm. The only weapon that was used was a firearm.

1

in-field identification violated his due process rights, that the court's findings pursuant to section 1192.7, subdivision (c)(23) were not supported by sufficient evidence, and that the juvenile court erred in setting his maximum term of confinement (MTC). We agree with appellant's last two contentions and remand.

## I. Background

After the petition was amended on motion of the district attorney, to allege that appellant was only armed with a firearm during the commission of the robberies (rather than the original allegation that he personally used a firearm), the juvenile court conducted a combined jurisdictional hearing and evidentiary hearing on appellant's motion to suppress the results of the in-field identification procedure. The evidence adduced at that hearing indicated that on the evening of October 5, 2010, at approximately 7:50 p.m., two minors (16-year-old Carlos R. and 15-year-old Luis G.) were standing on a corner in Redwood City. It was almost dark; the street lights were illuminated. Luis was sitting on Carlos's green "Next" BMX bicycle.

Two individuals (appellant and U.K., a juvenile), approached the victims. Both wore dark hoodies with the hoods up over their heads, jeans with rolled up cuffs, and black leather-style sneakers resembling Vans "Off the Wall" shoes. Both were shorter than the victims, who were six feet tall. As U.K. and appellant approached the victims, they pulled up masks to cover their faces. U.K. pulled a bandana over his lower face and nose; he was holding a black handgun and flashed it at the victims. He then put the gun back into the front pocket of his hoodie. Appellant's mask was a black mask resembling the "Phantom of the Opera" mask; it covered part of his face, but did not cover his eyes, eyebrows, nose or mouth. The victim, Carlos, thought it was unusual that both individuals had cuffed jeans on. Carlos later identified a mask seized by the police as the mask that was worn by appellant during the ensuing robbery.

Appellant and U.K. ordered the victims to lie on the ground and to hand over their valuables. U.K. pushed Luis to the ground and told him that he was going to shoot him if he looked back. A similar threat, that he would be shot if he looked back, was made to Carlos, by appellant. Luis felt the gun was real, as U.K. was pointing it at him and acting

2

like he was going to shoot him. Luis felt the object when it was put to his head and it felt like a gun—it was cold like it was made of metal. Luis testified that he was afraid—he was "panicking." He said that he and Carlos were ordered to take everything out of their pockets. He complied and emptied his pockets of $40 in cash and some other items, because U.K. "was pointing a gun" at him. U.K. also removed a gold chain from Luis's neck, and took his shoes (despite Luis's protestations due to the cost of the shoes).

Carlos told appellant that he had nothing on him. When appellant removed a $10 bill from Carlos's pocket, he waived it in front of Carlos's face. Subsequently, one of the robbers hit Carlos on the head with the butt of the gun (cutting his scalp). Neither of the victims was directly asked which robber struck Carlos. The robbers also took Carlos's shoes. After the robbers started to leave, appellant returned and took Carlos's bicycle. He rode away on the bike, with U.K. running alongside. The victims went to Luis's house and called 911. Police arrived within three minutes, summoned paramedics to treat Carlos, and took a description of the robbers and the stolen bicycle. Within three-to-five minutes of the robbery information going out through dispatch, Officer Cang saw appellant walking a BMX bicycle on the sidewalk, which he found unusual at that time of night. He contacted appellant, who was sweating and nervous (appellant kept looking around). Appellant was wearing dark clothing—a black zipped up hoodie and dark blue jeans. The bicycle matched the description of the stolen bike, including distinctive white tape on the handle. Officer Cang, along with Officer Mateo, conducted an in-field identification, the details of which will be discussed below.

Officer Fine responded to the area within five-to-seven minutes of the dispatch, and at Cang's request he walked back along the street appellant had been walking down. On the same side of the street, about three houses from the location where appellant was detained, Officer Fine located a black mask discarded in the front yard of a home. Luis identified appellant, the bicycle, and the mask. Carlos also identified appellant and the stolen bicycle. He also identified the black mask as the one worn by the person who stole his bicycle.

3

After waiving his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436), appellant gave conflicting stories of how he came to be in possession of the bicycle and the mask. He later indicated that he feared for his family if he revealed who his accomplice was in the taking of the bicycle, and asked how many years he was going to spend at the California Youth Authority. At the jurisdictional hearing, appellant testified that he did not commit the robberies. He said that he was walking around with a friend named D.E. when another friend named O.M. drove up with a stolen bicycle and the mask, and asked him to get rid of them. Appellant took both items and tossed the mask toward a house; he was walking the bicycle up the street when he was stopped by the police. On cross-examination, appellant changed his testimony and admitted that he owned the black mask "all the time," and that he had lied to the police. He indicated he was involved in gangs and that gang members had to follow orders. The defense additionally called J.R. (a 16 year old) to testify regarding certain statements made by Luis regarding the robbers.

Based upon this evidence, the court sustained all allegations of the amended petition, as detailed above, continued appellant as a ward, reinstated his probation and ordered him to serve 830 days in jail. This timely appeal followed.

## II. Discussion

### A. The In-field Identification Procedure Did Not Violate Due Process.

An out-of-court identification procedure violates due process if the procedure is impermissibly suggestive, giving rise to a very substantial likelihood of irreparable misidentification. (*Stovall v. Denno* (1967) 388 U.S. 293, 301–302.) Even if the identification procedure is unduly suggestive, and unnecessarily so, the identification is still admissible if otherwise reliable under the totality of the circumstances. Factors the court will look at to determine the reliability of the identification include the opportunity of the witness to view the suspect at the time of the crime, the witness's degree of attention at the time of the crime, the accuracy of any prior descriptions of the suspect given by the witness, the level of certainty of the witness in his identification of the suspect, and the lapse of time between the crime and the identification. (*Manson v.*

4

*Brathwaite* (1977) 432 U.S. 98, 111–112, 114 (*Manson*); *People v. Cunningham* (2001) 25 Cal.4th 926, 989 (*Cunningham*).)  As our Supreme Court recently noted, " '[i]f, and only if, the answer to the first question is yes and the answer to the second is no, is the identification constitutionally unreliable.' [Citation.]  In other words, '[i]f we find that a challenged procedure is not impermissibly suggestive, our inquiry into the due process claim ends.' [Citation.]" (*People v. Ochoa* (1998) 19 Cal.4th 353, 412 (*Ochoa*).)

In the present case, our inquiry could end with a finding that the identification procedure was not impermissibly suggestive.  In *Ochoa*, the court first noted that the standard of review for a claim of undue suggestiveness is unsettled, and declined to resolve the issue, but went on to find the particular procedure in that case passed muster even under the independent review standard.  (*Ochoa*, *supra*, 19 Cal.4th at p. 413.)  The court then specifically declared that " '[t]he "single person showup" is not inherently unfair.' [Citation.]" (*Ibid*.)  As the court explained, in order for a witness identification procedure to violate due process, the state must improperly suggest something to the witness—it must "initiate an unduly suggestive procedure."  It is only a procedure that suggests the identity of the person suspected by the police in advance of identification of the suspect by the witness that is unfair.  (*Ibid*.)  The California Supreme Court has not declared such showups to be unconstitutionally suggestive in all circumstances.

Assuming, without deciding (as the court did in *Ochoa*), that the standard of review regarding suggestiveness is by independent review, we find that appellant has failed to meet his burden of demonstrating that the identification process here was impermissibly suggestive and unnecessary.  Appellant was presented to the victims for an in-field identification procedure shortly after he was detained by the police.  The identification of appellant by the victims occurred within minutes of the robbery.  The victims' memories of the events were fresh in their minds, including their descriptions of the suspects, the suspects' clothing, and their masks.  While officers were present at the scene of the identification, that alone does not make the identification suggestive.  (*Perry v. New Hampshire* (2012) ___ U.S. ___, ___ [181 L.Ed.2d 694, ___, 132 S.Ct. 716, 718–719 [must be improper police conduct involved].)  Officer Mateo admonished the victims

5

pursuant to a standard field identification form, including an admonition that they did not have to identify the individual they were being shown as having been involved with the crime. The officer did not signal to the victims that they should identify appellant as one of the robbers. He put no pressure on the victims, nor did he use any intimidation, to get them to identify anyone.

Identifying the perpetrators of this crime quickly was a necessity, as a robbery by two individuals involving the use of a firearm had just occurred. Removing the individuals responsible for this violent crime from the streets in an expeditious manner was a priority; the in-field showup procedure accomplished that need. Additionally, in order to take advantage of any other identification procedure, such as a photographic or live lineup, appellant would have had to have been detained for a protracted period of time.

The identification procedure was not unduly suggestive, and given the nature of the crime that had just been committed, was necessary under the circumstances to quickly apprehend the suspects involved in an armed robbery, in order to protect citizens and to possibly allow the detained individual to go free if not identified. Indeed, single person showups for in-field identifications are encouraged because any element of suggestiveness is offset by the reliability of an identification made while the events are fresh in the witness's memory and because the interests of both law enforcement and suspects are best served by an immediate determination as to whether the correct person has been apprehended. (*In re Carlos M.* (1990) 220 Cal.App.3d 372, 387.)

Our inquiry could end here, but we also note that the identification of appellant was otherwise reliable, considering the totality of the circumstances and factors identified in *Manson, supra*, 432 U.S. at pages 104–107. The victims were able to observe the robbers, from close up, for a period of time and to observe their appearance, including their height, unusual clothing (including cuffed jeans and Vans-style shoes) and masks. The identification was made within minutes of the crime, while the events were fresh in the victims' minds. Additionally, the identification of appellant was corroborated by the discovery of the victim's bicycle in his possession, and by the discovery nearby of the

distinctive mask that he wore during the robbery. Appellant "bears the burden of demonstrating the existence of an unreliable identification procedure. [Citations.]" (*Cunningham, supra,* 25 Cal.4th at pp. 989–990.) He has failed to do so here. Under the totality of these circumstances, the identification was reliable.

**B. Penal Code Section 1192.7 Finding Was Not Supported by Sufficient Evidence.**

The petition, as originally filed in this case, alleged as to the two robbery counts that appellant personally *used* a firearm, pursuant to section 12022.53, subdivision (b). Prior to the taking of evidence at the jurisdictional hearing, the prosecutor filed an amended petition which replaced the use allegation with an allegation that appellant was *armed* with a firearm, pursuant to section 12022, subdivision (a)(1). Since the enhancement for being armed carries a much lighter sentence (one year) than that for using a firearm during the commission of a robbery (10 years), the amendment was presumably made by the prosecution in recognition of a lack of evidence of personal use by appellant. Use of a firearm requires personal use; arming may be vicarious arming.

However, the amended petition let stand separate allegations with regard to the two counts of assault with a deadly weapon—that they were serious felonies under section 1192.7, subdivision (c)(23) because appellant personally used a deadly or dangerous weapon—and the juvenile court found these to be true. As the only deadly or dangerous weapon that was used in this case was a firearm, these latter allegations could only refer to appellant's alleged use of a gun. While robbery is a crime specifically enumerated as a serious felony (Pen. Code, § 1192.7 subd. (c)(19)), assault with a deadly weapon is not specifically enumerated as a serious felony. Whether or not it is considered to be a serious felony depends upon the manner in which it was committed, including an enumerated factor such as use of a firearm (Pen. Code, § 1192.7, subd. (c)(8)) or use of a deadly or dangerous weapon (Pen. Code, § 1192.7, subd. (c)(23)). Such factors may be pleaded and if found to be true, may impact the future determination of whether the assault with the deadly weapon conviction will be considered a serious felony for enhancement purposes.

From the record, it is not at all clear that appellant personally used a firearm. Neither victim testified as to which suspect struck Carlos in the head with a gun; neither was specifically asked the question. Luis testified that it was U.K. whom he initially observed with a firearm. While he heard appellant threaten Carlos ("if he looked back at him he was gonna get shot"), he specifically said that he did not know if appellant had a gun. The Attorney General's speculation that appellant either had his own gun, or borrowed the one that U.K. had, in order to hit Carlos, is just that—speculation. Contrary to what the Attorney General argues, the record does not support the conclusion that appellant necessarily was focused on and standing beside Carlos, where as U.K. was focused on and standing beside Luis. While the record supports the inference that this was true initially, and that appellant went through Carlos's pockets and showed him the $10 bill that he found, the robbers' positions apparently changed thereafter. Carlos testified that after the money was taken from him, *both* robbers got behind him, so he did not know which one took his shoes. Again, the record is not clear is this regard because neither attorney below clarified these issues in their questioning of the victims. Carlos appears to have been hit in the head with the gun after his money was taken, and before his bike was stolen; it is unclear whether he was hit before or after his shoes were taken, or by whom. However, the robbers' positions did not remain stationary. Indeed, it appears that appellant was the individual who went over and took Luis's shoes. Thereafter, appellant went back to Carlos and after "they" removed Carlos's shoes, the robbers ran away. Luis believed it was appellant that returned and took the bike, and then both robbers left. Additionally, the mere fact that appellant told Carlos that if he looked back at the robbers he would be shot, does not mean that he was necessarily the one who was going to shoot him. While appellant may have been upset when he found money in Carlos's pocket after Carlos said he did not have anything, that by itself is insufficient evidence that it was he, rather than U.K., who hit Carlos with the gun.

Given all the evidence, including the fact that U.K. was the only individual seen by Carlos or Luis with a gun, there was insufficient evidence to support the finding that

8

appellant personally used a weapon.[3]  The juvenile court's finding that the assault with a deadly weapon was a serious felony due to appellant's use of a deadly or dangerous weapon pursuant to section 1192.7, subdivision (c)(23) is reversed.[4]

## C.  The MTC Must be Modified.

The juvenile court asked the prosecutor what the MTC was on the "charges that were sustained by the court."  The prosecutor responded that it was 11 years six months, the defense attorney agreed, and without analysis or explanation the juvenile court merely adopted that figure.  The MTC was not reflected, however, in the disposition order.  While the Attorney General agrees that the disposition order should be amended to reflect the MTC, there is disagreement as to what the MTC is.

We remand for the juvenile court to determine itself, in the first instance, the appropriate MTC and to explain its reasoning on the record.  The MTC shall then be included in the disposition order.  First, as the Attorney General notes, the MTC must reflect not only the maximum punishment on the charges which were sustained by the juvenile court at this jurisdictional hearing, but also any *appropriate* periods aggregated from appellant's prior petition, which were included in the current petition and disposition report.[5]  Second, the juvenile court should determine the MTC for the allegations that it sustained on the current petition, making findings regarding whether or not the court is staying any punishment pursuant to section 654.  Part of the Attorney General's argument in this regard misses the mark, as appellant is not contending that punishment should be stayed as between counts relating to separate victims, but rather that the assaults with a deadly weapon as to each victim were incidental to each of the

---

[3] The remainder of the Attorney General's argument is totally off point, as it addresses the arming enhancement under section 12022, subdivision (a) rather than the 1192.7, subdivision (c)(23) use allegation at issue here.

[4] From the juvenile court's finding, it is unclear that the court was truly finding that the assaults with a deadly weapon were serious felonies under section 1192.7, subdivision (c)(23), even though that was clearly what was alleged.  The court in sustaining the various allegations in the petition was referencing special allegations specifically attached to counts one and three (the robberies) when it made those findings.  The court may simply have been finding that robbery is a serious felony under section 1192.7, subdivision (c)(19), despite its recitation that the finding was under section 1192.7, subdivision (c)(23).

[5] Again, the parties disagree substantially with regard to whether these particular prior adjudications should be included in the MTC, and if so, what the appropriate amount of time to be added would be.

9

respective robberies and should, therefore, be stayed. The Attorney General's argument that appellant had a separate criminal objective in striking Carlos with a gun is not relevant given our finding that there was insufficient evidence that appellant was the individual who struck Carlos. The juvenile court should make the determination as to whether section 654 requires staying the punishment for each of the assault with a deadly weapon charges and indicate the basis for its reasoning. The matter is remanded for the juvenile court's proper determination of the MTC.

### III. Disposition

The juvenile court's findings regarding the allegations pursuant to section 1192.7, subdivision (c)(23) are reversed. The matter is remanded to the juvenile court

for determination of the MTC, in a manner consistent with this opinion. In all other respects, the judgment is affirmed.

_____

Sepulveda, J.*

We concur:

_____

Dondero, Acting P.J.

_____

Banke, J.

* Retired Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.